**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JANICE McLEOD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **1:09-CV-934-TFM** |
| **MICHAEL J. ASTRUE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Following administrative denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*., Janice McCleod ("McCleod") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review of this decision, it became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court AFFIRMS THE COMMISSIONER'S decision.

### I. STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[1]

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[2]

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At

---

[1] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[2] This subpart is also referred to as "the Listing of Impairments."

[3] Though a supplemental security income case (SSI), *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), applies the sequential process applicable to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. "The Social Security mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), quoting 42 U.S.C. §405(g). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote* at 1560, citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm if the court would have reached a contrary result as finder of fact, or if evidence preponderates against the Commissioner's findings.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

McLeod, age 56 at the time of the hearing, completed high school.  Her past relevant work includes employment as a presser, fast food prep cook, and a fast food cashier/checker. She has not engaged in substantial gainful work activity since her alleged disability onset date of October 20, 2006.  McLeod's application claims she is

unable to work because of diabetes, hypertension, asthma, migraines, back pain, stroke, and arthritis.[5]

During McLeod's administrative hearing, she said that she and her niece take care of her son, age 24, who receives disability payments for his mental condition.  McLeod has a driver's license but no longer drives after wrecking a borrowed car because she couldn't see.  McLeod stopped working as a dress presser at Andrew's Bridal because of back and shoulder pain.  She takes Lortab every twelve hours for her back/shoulder pain and migraine headaches.  She has been treated for several abscesses which are caused by her diabetes, and has to urinate frequently, approximately every 25 to 35 minutes.  McLeod has leg/foot cramps that last thirty minutes to an hour, and asthma (aggravated by her past work pressing bridal dresses).  She said the abscesses cause "terrible" pain, and that her sugar level on the date of the hearing was "too high to read" despite taking insulin.  McLeod said her diabetes is uncontrollable.  She reported having two inhalers for her asthma and uses them as often as needed.  McLeod was denied service at a local clinic for indigents because she was in the process of trying to get disability.

The ALJ began her findings of fact by noting McLeod meets the insured status requirements of the Social Security Act for the relevant timeframe, and that she had not engaged in substantial gainful activity since the alleged onset date of October 20, 2006.[6]  The ALJ evaluated McLeod's diabetes mellitus, asthma, musculoskeletal impairments, and hypertension for Listing-level severity and concluded that no applicable listings were

_____

[5] R. at 131.
[6] R. at 17.

met.[7]  Having found that no condition met the Listings for disability, the ALJ proceeded to evaluate whether the record contained evidence that McLeod's demonstrated impairments could reasonably be expected to produce the pain or limitations alleged, and therefore limit her ability to do basic work activities.  The credibility of a claimant, as determined by the ALJ, is a key factor in this determination.

McLeod's current medications are Vicodin and Robaxin for back pain; Metformin, Amlodipine and Humulin for diabetes mellitus; Hydrochlorathiazide as a diuretic; Potassium for muscle cramps; and Advair and Albuterol for asthma.[8]  The medical record documents several emergency room visits for treatment related to abscesses caused by diabetes, and McLeod's blood glucose levels were often high during these visits.  The ALJ cited record evidence from two treating physicians, Dr. Bret Johnson and Dr. C. Ted Paulk, that McLeod was non-compliant with the diet recommended by treating physicians.[9]  Dr. Paulk noted that McLeod's blood sugars were regulated by medication upon her discharge from the hospital.[10]  The ALJ construed McLeod's noncompliance as a sign that McLeod's diabetic symptoms are not as serious as alleged in her application and appeal.  The ALJ concluded that McLeod's diabetes is controlled by conservative treatment.[11]

The ALJ's review of the record evidence regarding McLeod's asthma led her to find the condition is controlled by her use of appropriate medications and avoidance of

---

[7] R. at 18-19.
[8] R. at 20.
[9] R. at 21; 194; 251, 261.
[10] R. at 251.
[11] R. at 21.

conditions/fumes that aggravate her condition.[12]  The record of treatment for McLeod's shoulder pain shows conservative treatment, through trigger point injections, by Dr. Paulk.  Dr. Paulk did not find any neurological deficits in the upper extremities, though her condition was aggravated by an automobile accident in October, 2008.  In December, 2008, Dr. Paulk noted that McLeod was doing "fairly well."[13]  Likewise, the ALJ found McLeod's treatment for back and shoulder pain is essentially conservative, and effective in controlling her symptoms.  Notes from a January, 2009, appointment with Dr. James Owen, orthopedic surgeon, show relief through physical therapy, trigger point injections, and daily analgesic medication.  Dr. Owen addressed McLeod's complaint of pain on neck rotation with prescriptions for Lidoderm patches, Lortab, and Robaxin.[14]  McLeod's migraines are treated with Lortab, which improved her condition after an emergency room visits in 2007 and 2008.[15]  Records show McLeod's hypertension responds well to properly-administered conservative treatment, though the ALJ noted reports of noncompliance with regards to hypertension.

McLeod cited financial difficulties in paying for medicines as grounds for her noncompliance with diabetes and hypertension.[16]  The ALJ specifically addressed McLeod's claim of financial hardship by noting that she had not used community clinics in her area which offer both reduced cost and free medical treatment for indigent people. The ALJ noted McLeod's explanation that one such resource, the Saliba Clinic, refused

---

[12] R. at 21-22.
[13] R. at 22, 421.
[14] R. at 23.
[15] R. at 23.
[16] R. at 31-32, 44-45.

to see her because she was attempting to qualify for disability. The ALJ also noted that no opinion from any treating or examining physician stated that McLeod is disabled. The ALJ determined the RFC assessment by the State Agency medical consultant were consistent with, and supported by, the objective medical evidence in the record. These findings were assigned the significant evidentiary weight, but not controlling weight. The RFC assessment permits McLeod to occasionally lift and/or carry up to 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. Further, McLeod should avoid work which requires climbing a ladder, rope, or scaffold; or concentrated exposure to extreme heat, wetness, humidity, or fumes/odors/dusts/gases/poor ventilation.[17]

A vocational expert (VE) testified during McLeod's hearing. The ALJ told the VE to apply the limitations set forth in the RFC assessment to an unskilled individual who could work at the medium-exertional level work.[18] The VE responded that such a person could work as a courier, production assembler, and sorter/hand packager. The VE testified that each job is available at the light and medium exertional levels.[19] The VE also opined the hypothetical individual could perform medium work as a forklift operator.[20]

The ALJ found McLeod is severely impaired by diabetes mellitus, asthma, migraines, hypertension, and chronic shoulder and back pain, but that this combination of impairments does not meet or medically equal one of the listed impairments in 20 C.F.R.

---

[17] R. at 243-50.
[18] R. at 49, 52-53.
[19] R. at 55-56.
[20] R. at 56.

Part 404, Subpart P, Appendix I.[21]  The ALJ found McLeod is unable to perform her past relevant work, but is able to work as a courier, production assembler, and sorter/hand packager.[22]  The finding that McLeod can perform these other occupations led the ALJ to conclude she is not entitled to disability benefits under the Act.[23]

### III.  ISSUES

McLeod raises two issues for judicial review:[24]

1.   Whether the ALJ's RFC finding is supported by substantial evidence; and

2.  Whether the Commissioner met his burden to establish that McLeod can perform other work in the national economy.

### IV.  DISCUSSION

**1.  <u>The RFC finding is supported by substantial evidence.</u>**

McLeod argues the ALJ's adoption of the RFC finding by the State Agency medical consultant does not carry the weight of substantial evidence because the consultant is not a physician, but a lay disability examiner.  The Commissioner concedes that the ALJ was indeed mistaken about the identity of the State Agency reviewer, but that the error is harmless because McLeod has not shown that the error affected the outcome of the case.

The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled.  20 C.F.R. §§ 404.1512(a), 416.912(a); *Jones v. Apfel*, 190 F.3d

---

[21] R. at 17, 18.
[22] R. at 24, 25.
[23] R. at 26.  The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520  and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).
[24] McLeod sought and received the Court's permission to file a *Reply Brief* (Doc. 23).  Where appropriate, arguments from that brief will be discussed in the context of the issues raised in her original brief.

1224, 1228 (11th Cir. 1999).  McLeod bases her argument that the ALJ's finding lacks the support of substantial evidence on the absence of any medical opinion that she can perform work.  McLeod argues for reversal even though she has not produced any opinions that she cannot work.  Even if McLeod's physicians had provided an opinion in support of her disability, it is an ALJ's duty to determine a claimant's RFC.  An ALJ evaluates medical statements "in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ."  *Green v. Social Security Administration*, 223 Fed.APpx. 915, 923 (11th Cir. 2007), citing *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).

While there is no RFC finding from a medical professional in this case, there is abundant medical evidence that McLeod is indeed able to work.  After noting the absence of any opinion from a treating or examining physician that McLeod cannot work, the ALJ decision highlights the lack of restrictions on McLeod despite her allegations of totally disabling symptoms.[25]  The Court notes that the ALJ did not give the opinion by the State Agency consultant "controlling weight," and justified all findings with references to the actual medical reports from treating physicians.  The decision linked all RFC restrictions to the conditions which caused the respective limitations on McLeod's ability to work – diabetes (R. 20); asthma (R. 21); back/shoulder pain (R. 22); and migraines and hypertension (R. 23).  Each set of restrictions is supported by a discussion of the medical evidence which supports the ALJ's findings.  Therefore, the RFC findings, though

---

[25] R. at 24.

adopted from the reviewing State Agency reviewer, are fully supported by the medical records.[26]

Although the Court is satisfied that the RFC determination is supported by substantial evidence, two subsidiary issues remain.  McLeod asserts that a remand is appropriate so that the examining physicians can submit RFC statements.  Essentially, McLeod suggests that the ALJ did not develop a full and fair record.  Again, it is McLeod's duty to prove disability and to produce evidence in support of her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  Here, there is no claim that the records from McLeod's treating physicians were incomplete, or lacking in any way.  The records simply did not pronounce her "disabled," and the lack thereof was noted by the ALJ's decision.

The second issue concerns McLeod's claim of noncompliance because of indigency.  McLeod's *Reply Brief* argues that she should be excused from noncompliance under *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988).  McLeod acknowledges that Dawkins is distinguishable where an adverse determination "was not significantly based on a finding of noncompliance."  Doc. 23, at 2-3, citing *Ellison*, 355 F.3d at 1275.  The Court finds that the ALJ decision in this case did not pin McLeod's ability to work on the evidence of noncompliance, but instead tailored her physical and environmental limitations on the medical record.  The Court's reading of the record notes that McLeod's claims of indigency seem to primarily impact her treatment for diabetes and

---

[26] McLeod's reliance on *Chitty v. Astrue*, No. 1:07-cv-861-WC (M.D. Ala. Dec. 30, 2008) is not persuasive, as that case presented an ALJ's adoption of a lay disability examiner's RFC opinion over a treating physician's.  There is no conflicting RFC finding from any of McLeod's treating physicians in this case.  Therefore, the ALJ has not given greater weight to a lay examiner over a medical doctor.

hypertension.  There is no indication that she is without her medications for asthma, migraines, or back/shoulder pain.  Further, McLeod's noncompliance in due in part to her dietary choices, which are unrelated to her claim of indigency.  This fact was noted by the ALJ during her summary of McLeod's treatment by Drs. Johnson and Paulk.[27]  Thus, while the record supports the ALJ's comments concerning McLeod's noncompliance, these observations do not overcome the medical evidence which supports the RFC determination.

Finally, McLeod supports her argument for exemption from noncompliance with a discussion of her denial for treatment at the Saliba Clinic in Dothan, Alabama.  McLeod explained to the ALJ during her hearing that she was denied an appointment because she was an applicant for disability benefits.  Her *Reply Brief* lists various circumstances, set forth on the clinic's website, under which patients do not qualify for care.  McLeod represents that "disability" is a disqualifying factor, when in fact the website states that it does not perform "disability determinations."  The Court contacted the clinic to ask whether a disability claimant would actually be denied care.  A clinic representative explained that they try not to duplicate services offered elsewhere in the community, and patients seeking care related to pregnancy, HIV, or birth control are referred elsewhere.  Patients whose care relates to auto accidents, workman's compensation, or disability determinations are also denied care because the clinic does not have resources to provide examinations and documentation for patients whose primary concerns are administrative hearings and litigation.

---

[27] R. at 21.

The representative emphasized that a disability claimant who has received a final determination of "not disabled" is welcome to receive treatment at the clinic, and boasted that some former claimants have been able to return to work because of the care and medication they accessed through the clinic.  Thus, McLeod is again eligible to receive treatment at the Saliba Clinic.  Unfortunately, the clinic will close in December, 2010 due to a significant drop in donations and resources.

The record supports the ALJ's RFC determination.  Notwithstanding the ALJ's assignment of significant weight to an RFC assessment by a lay State Agency examiner, there was no conflicting RFC statement by a medical professional.  Further, the ALJ's finding was substantially supported by the medical evidence in the record.  Accordingly, the Court finds no error as to this issue.

**2.   The Commissioner met his burden of met his burden of establishing that McLeod is capable of performing other work in the national economy.**

McLeod argues the Commissioner could not rely on the VE's testimony to show her capable of performing work in the national economy because the VE was instructed by the ALJ to use the RFC findings from the State Agency.  The Commissioner responds the ALJ's reliance on the RFC statement was appropriate, and the administrative burden was satisfied.

In light of the above discussion which affirms the ALJ's adoption of the RFC assessment issued by a lay disability examiner, where no medical doctor issued a conflicting RFC statement, this issue is without merit.

## V.   CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment is entered herewith.

DONE this 6th day of October, 2010.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE